UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JERRY ARTRIP, *ETC*.            )
                                )
V.                              )   NO. 2:08-CV-200
                                )
NORFOLK SOUTHERN RAILWAY        )
COMPANY                         )

## MEMORANDUM AND ORDER

On November 4, 2007, the vehicle in which Donald Artrip was driving was struck by a Norfolk Southern train at a private crossing in Sullivan County, Tennessee. Mr. Donald Artrip was killed.

Jerry Artrip, Donald's father, qualified as administrator *ad litem* of his son's estate, and thereafter filed a wrongful death suit against the railroad in the Law Court for Sullivan County. After removing the case to this court, the railroad filed both a motion to dismiss (Doc. 34), and a motion for summary judgment (Doc. 17). Both parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c).

During the pendency of the two dispositive motions, plaintiff's attorney withdrew, prompting this court to instruct plaintiff to obtain counsel, or suffer the dismissal of his suit since he is not an attorney and cannot represent his son's estate. *See, Shepherd v. Wellman*, 313 F.3d 963 (6th Cir. 2002).[1] As of this date, as evidenced by a letter from plaintiff to the

---

[1] *See*, Order, Doc. 39.

magistrate judge dated December 15, 2008,[2] plaintiff has been unable to retain a lawyer and therefore still purports to represent his son's estate in this suit.

Although this suit could be dismissed because of Mr. Jerry Artrip's failure to obtain a lawyer, the court chooses rather to address the merits of the two dispositive motions, both for the sake of Mr. Artrip and the railroad.

It is alleged in plaintiff's second amended complaint[3] that Mr. Donald Artrip was survived by a wife and a minor son; that the surviving spouse, Cathy (sic: Kathy) Artrip, accepted $21,000.00 from the railroad in settlement of any claim that might be asserted against the railroad for Donald Artrip's death, and that Kathy Artrip executed a full release; that Kathy Artrip's settlement with the railroad was consummated before she conducted a meaningful investigation of the facts; that the purported settlement "fails for inadequate consideration;" that the railroad acted fraudulently and with "malice aforethought" by settling with the spouse on the day of Donald Artrip's death for the paltry sum of $21,000.00; and that the railroad knowingly or recklessly misrepresented or withheld facts from Kathy Artrip regarding the circumstances of the crossing accident. Plaintiff then alleges various acts of negligence on the part of the railroad, including a lack of any signals or warning signs at the crossing; the engineer's failure to keep a proper lookout ahead; and failure to sound the whistle; for all of which the plaintiff asked for both compensatory and punitive damages.

---

[2]Filed in this record by separate order.

[3]Doc. 33.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment must be granted to the moving party if the pleadings, discovery, and affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987).

> Further, the complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [citations omitted]. Although the standard for Rule 12(b)(6) dismissals is quite liberal, more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements. [citations omitted]. "In practice, 'a . . . complaint must contain either direct or influential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" [citations omitted].

*Scheid v. Fannie Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).

To the extent that matters outside the pleadings are considered, a motion to dismiss must be treated as a motion for summary judgment, F.R.Civ.P. 12(d).

Defendant's motion for summary judgment argues that this action is barred by the settlement agreement between the surviving spouse and the railroad. The motion to dismiss the second amended complaint asserts that plaintiff, as administrator of his son's estate, lacks standing to challenge the validity of that settlement agreement. The two positions are inextricably intertwined and must be considered together. The declarations submitted in support of the railroad's motion for summary judgment necessarily must also be considered

3

with respect to the motion to dismiss since, in reality, the two dispositive motions merely raise different aspects of the same issue, *viz.*, Mr. Jerry Artrip's standing -authority, if you will - to file and pursue this suit.

Under Tenn. Code Ann. § 20-5-106 and § 20-5-110, the right of action to maintain a suit for wrongful death passes first to the surviving spouse, and it is the surviving spouse who has the right to negotiate a settlement of the wrongful death claim and execute a valid release which is binding upon the children and next of kin of the deceased. Any potential interest that an administrator might have in bringing a wrongful death action is subordinate to that of a surviving spouse. *See, e.g., Troutman v. Johnson City, Tennessee*, 392 F.Supp. 556, 558 (E.D.Tenn. 1974), and *Estate of Baker, ex rel. Baker v. Maples*, 995 S.W.2d 114, 115 (Tenn. App. 1999).

Kathy Artrip was offered $21,000.00 to settle any wrongful death claim, she accepted that sum of money, and she executed a release in return for it. Nevertheless, the *Estate of Baker*, *supra*, suggests that a ridiculously small payment accepted by a surviving spouse in settlement of a claim for the wrongful killing of her husband, coupled with other evidence of the lack of any meaningful investigation into the circumstances of his death, could vitiate the settlement and effectively constitute a waiver of her right to settle the claim. The issue then becomes, does the record in this case support plaintiff's allegations that Kathy Artrip was mislead or defrauded by the railroad; or that she herself participated in what amounted to a fraudulent settlement with the railroad; or, at the very least, that the settlement agreement was not *bona fide* because she hastily entered into it without a meaningful investigation of

4

the facts?

The only facts to be considered are those set out in the second amended complaint, and those in the affidavits and declarations filed at various times, some of which were filed by defendant in support of its motion for summary judgment, and some of which were filed by plaintiff in support of his motions to amend his complaint and to have a special master appointed. All affidavits and declarations, regardless of why or when filed, have been considered with reference to defendant's dispositive motions.

### *DECLARATION OF SHARON MCWILLIAMS, EXHIBIT 1 TO DEFENDANT'S MOTION TO DISMISS, DOC. 3*

Sharon McWilliams is a Senior Claim Agent for the railroad, and she investigated the crossing accident that killed Donald Artrip. Her investigation revealed that at 12:55 a.m. on November 4, 2007, Donald Artrip was traveling west on Vance Tank Road which runs parallel to the railroad tracks. The defendant's train also was traveling west, at approximately 30 miles per hour.

To get to his house, Donald Artrip turned left from Vance Tank Road onto a private road, which crossed the railroad tracks. According to Ms. McWilliams, Donald Artrip drove onto the tracks without stopping, and was immediately struck by the defendant's train.

Ms. McWilliams confirmed that Donald Artrip was married to Kathy Faye Artrip and a copy of their marriage certificate was attached to her declaration.

Ms. McWilliams recited in her declaration that, although she saw no liability on the part of the railroad, she settled all potential claims with Kathy Artrip for the sum of

5

$21,000.00, in return for which Ms. Artrip executed a release, a copy of which also was attached to the declaration.

### *AFFIDAVITS OF JENNIE STANLEY AND JERRY ARTRIP, FILED AS EXHIBITS 1 AND 2 TO PLAINTIFF'S MOTION TO APPOINT A MASTER (DOC. 6)*[4]

Ms. Stanley was a witness to the collision. Immediately prior to the accident, she was proceeding eastwardly on Vance Tank Road. She noticed Donald Artrip's car approaching her, partially in her lane of travel; he corrected his vehicle back into his own lane of travel and the two cars passed one another.

Ms. Stanley saw the approaching train because its light was facing her.

After she passed Donald Artrip's vehicle, he turned behind her onto the private road and, in her rearview mirror, Ms. Stanley could see nothing but flying gravel and Mr. Artrip's brake lights.

Ms. Stanley never heard a train whistle.

In his affidavit, Mr. Jerry Artrip states that he obtained a copy of a laboratory test regarding a sample of blood taken from his son after the accident, and that laboratory test showed no alcohol was in his son's system. A copy of that laboratory analysis was attached to Mr. Artrip's affidavit and, contrary to Jerry Artrip's assertion in his affidavit, it revealed that the blood sample taken from Donald Artrip contained a significant amount of alcohol.[5]

---

[4]Also filed as exhibits to plaintiff's motion to amend his complaint, Doc. 7.

[5]In defense of Jerry Artrip, it is easy to see why a layman could misinterpret this laboratory report, as Mr. Jerry Artrip obviously did.

Mr. Artrip goes on to note that the release signed by Kathy Atrip was dated November 4, 2007, the date of his son's death.

### SECOND DECLARATION OF SHARON MCWILLIAMS, FILED AS EXHIBIT 1 TO DEFENDANT'S RESPONSE TO MOTION TO AMEND COMPLAINT, DOC. 10

This declaration of Ms. McWilliams clearly was in response to Mr. Artrip's affidavit in which he pointed out that his daughter-in-law signed the release on November 4, the day of the accident. Ms. McWilliams stated that the release actually was signed on December 10, 2007, and that "Ms. Artrip simply wrote in the date of the accident as the date of the release."

### THIRD DECLARATION OF SHARON MCWILLIAMS, EXHIBIT 1 TO DOCUMENT 19

In this declaration, Ms. McWilliams states that at no time did she make any misrepresentations to Kathy Artrip concerning the accident, and she again states that the release actually was signed on December 10, 2007, not November 4.

### DECLARATION OF KENNETH FERSLEW, PH.D, DOC. 23

Dr. Ferslew is a toxicologist. His declaration was filed in response to Jerry Artrip's earlier affidavit that the toxicology report reflected that the blood sample taken from Donald Artrip immediately after his death showed that it contained no alcohol. Dr. Ferslew merely points out that the toxicology report showed a serum alcohol concentration of 259 mg/dl, which is three times the legal limit for operating a motor vehicle in Tennessee.

### JERRY ARTRIP'S LETTER TO THE MAGISTRATE JUDGE DATED DECEMBER 15, 2008, DOC. 42

In this letter, Mr. Artrip points out that Tenn. Code Ann. § 65-12-109 requires that the train whistle or bell shall be sounded before every crossing and that 49 C.F.R. 222.25 expressly indicates that it does not affect state or local laws. In this regard, he refers to the affidavit of Ms. Stanley wherein she recited that the train did not blow its whistle. Mr. Artrip presumably intended to refer to Tenn. Code Ann. § 65-12-108(2), which indeed does require that the whistle or bell of the locomotive shall be sounded one quarter of a mile from the crossing and at short intervals thereafter until the crossing has been traversed. Tenn. Code Ann. § 65-12-109 provides that a violation of § 108 is negligence *per se*. However, it is noted that Tenn. Code Ann. § 65-12-108(1) indicates that the statute applies to *public* road crossings.

He also recited his efforts to obtain a video recording of the collision to see if another vehicle prevented his son from crossing the tracks, or if he was pushed from behind by someone.

He refers to an unnamed friend of his son who is willing to execute an affidavit that he and Donald Artrip were together at 10:00 p.m. on November 3 and that Donald Artrip was not drunk. Mr. Artrip then stated in his letter that his son's injuries appeared to him to look like he had been struck by a ball bat or a cue stick.

He concludes his letter by stating that his son was "something special."

Although the unsworn statements in Mr. Artrip's letter cannot be considered with reference to the railroad's motion for summary judgment, in deference to Mr. Artrip they nevertheless will be discussed.

It bears repeating that the defendant's two motions raise the issue of the authority of the administrator of Donald Artrip's estate to maintain a suit for the wrongful death of Donald Artrip. To decide that issue, it is also necessary to determine whether there are any facts to support the administrator's allegations that the decedent's widow waived her statutory right to maintain the wrongful death suit (or settle the wrongful death claim) by reason of misrepresentations made to her by an agent of the railroad, or by her own acts of fraud or negligence.

Rule 9(b) of the Federal Rules of Civil Procedure require that a party must state with particularity the circumstances constituting fraud. Plaintiff makes only generalized allegations of misrepresentations by the railroad in his second amended complaint.

The undisputed facts reveal that the railroad settled the widow's wrongful death claim on December 10, and that the notation of November 4 as the date of release simply was an error. Thus, it cannot be said that there was any unseemly and improper haste by either the railroad or Mrs. Artrip to settle the claim.

The information concerning the facts of the accident, as then known by the railroad, was that the decedent drove without stopping onto a private railroad crossing, directly into the path of the train, and that his serum blood content was three times the legal limit in Tennessee for operators of motor vehicles. Although the locomotive did not blow its whistle, there was no requirement that it do so at a private crossing. *See*, 49 C.F.R. § 222.25 and Tenn. Code Ann. § 65-12-108(1). Also, Donald Artrip was driving alongside the train before he turned in front of it. Additionally, there was no statutory requirement that any signage be

9

erected at a private crossing, which this was.

In light of these facts, can it be said that the railroad overreached Kathy Artrip, or that Kathy Artrip's acceptance of $21,000.00 in settlement of her husband's wrongful death was imprudent? The answer is, no. Although no affidavit explicitly so states, everyone in the legal profession and insurance industry knows that defendants often pay a relatively small amount of money to "buy their peace," even when there is no liability. Rightly or wrongly, it is a matter of economics; paying a small amount to settle a claim for which there is no liability often is cheaper than the cost of defending the suit, even if the defendant ultimately prevails.

Kathy Artrip's actions in accepting $21,000.00 should be viewed in much the same light as the railroad's willingness to pay the $21,000.00. Mrs. Artrip reasonably could have concluded - as she obviously did - that her husband was at least 50% at fault for the accident, and that the relatively small sum of $21,000.00 was better than nothing at all.[6]

Mrs. Artrip had statutory priority regarding the filing of a wrongful death claim, and any settlement thereof. There is no fact in this record to support plaintiff's allegations in his complaint that the settlement agreement was so tainted by fraud or other circumstance that a court could hold as a matter of law that Mrs. Artrip arguably forfeited or waived her statutory preference to settle the claim. It therefore follows that the administrator of Donald

---

[6]Tennessee is a comparative fault state; if the injured party bears 50% or more of the total fault for the accident, the plaintiff recovers nothing. *McIntyre v. Balentine*, 833 S.W.2d 521 (Tenn. 1992).

Artrip's estate has no standing to pursue a wrongful death action against the railroad for the death of Donald Artrip.

The defendant's motion for summary judgment (Doc. 17) and motion to dismiss (Doc. 34) are therefore GRANTED and this suit is hereby DISMISSED with prejudice.

SO ORDERED:

s/ Dennis H. Inman  
United States Magistrate Judge